595 So.2d 136 (1992)
Stephen STEBILLA and Lynda Stebilla, etc., Appellants,
v.
Anthony J. MUSSALLEM, M.D., etc., et al., Appellees.
No. 91-381.
District Court of Appeal of Florida, Fifth District.
February 14, 1992.
Rehearing Denied March 25, 1992.
W.M. Chanfrau, Daytona Beach, James T. Terrell of Brown, Terrell, Hogan, Ellis, McClamma and Yegelwel, P.A., Jacksonville, and Edna L. Caruso, P.A., West Palm Beach, for appellants.
Kim E. Bouck of Smith, Schoder, Rouse & Bouck, P.A., Daytona Beach, for appellees Anthony J. Mussallem, M.D., Anthony J. Mussallem, M.D., P.A., d/b/a Physicians Alternate Birthing Home, and Lynda Smith, ARBP, CNM.
Charles Cook Howell, III, Michael S. O'Neal and Marcia Maria Morales of Foley & Lardner, Jacksonville, for appellee Angeliti Capili, M.D.
COBB, Judge.
The issue posed by this appeal is whether a medical malpractice complaint based upon a claim which accrued in April, 1988, must be dismissed, as a matter of law, if the corroborating expert opinion required by Chapter 88-1, Section 50, Laws *137 of Florida, effective February 8, 1988,[1] was not furnished to the defendants prior to the expiration of the two year statute of limitations in April, 1990. The trial court answered the question in the affirmative. Based upon the applicable statutory language, subsequent corrective legislation, and the opinion of the Florida Supreme Court in Hospital Corp. of America v. Lindberg, 571 So.2d 446 (Fla. 1990), we reverse.
In an order dated December 10, 1990, the trial court set out the pertinent facts of the case:
Plaintiffs, Stebilla, sue for medical malpractice arising from the death of their newborn son in April of 1988 allegedly caused by chicken pox which was misdiagnosed by the attending pediatric physician as heat rash. Plaintiffs also sue the birthing center, its operating physician, and the attending nurse.
Defendants move to dismiss the complaint for failure to comply with statutory provisions regarding medical malpractice presuit notice requirements, specifically that prior to suit the Stebillas did not provide Defendants with an expert medical opinion corroborating reason [sic] grounds to initiate medical malpractice litigation. Defendant, Capili's motion was a Motion to Dismiss/Motion for Summary Judgment.
The parties dispute the law in effect at the time the suit arose on the death of the child in April, 1988. Chapter 88-1, Section 50, Laws of Florida, effective February 8, 1988, established the requirement of a corroborating medical opinion, to be provided when the notice of intent to sue is filed. Chapter 88-277, Section 26, Laws of Florida, effective July 5, 1988, amended Section 50 of 88-1, changing only that the corroborating medical opinion shall be provided when the notice of intent to sue is mailed. Therefore, the necessity for the corroborating medical opinion predates the cause of action here. Plaintiffs could and should have complied with the requirement by providing the necessary opinion at the time the notice of intent was filed (or should have been filed) in conjunction with the lawsuit itself in February, 1990, (although this would negate the intended effect of providing the opinion before suit so as to in fact avoid suit), because Chapter 88-1 controlled. However, Pliantiffs [sic] did not comply, and do not yet specifically allege an ability to comply.
Defendants chose to regard the Stebillas' presuit notice as invalid for failure to provide the corroborating opinion, and so informed the Stebillas upon receipt of the notice in May of 1988. Defendants then indicated they would not cooperate in informal presuit discovery until the Stebillas had complied with the law. No further communication was had between the parties until suit was filed in February, 1990.
As determined by the trial court, the law applicable to the instant case was that enacted by Chapter 88-1, Section 50, Laws of Florida, at a special session in 1988. It became effective on February 8, 1988, prior to the accrual of the plaintiffs' alleged cause of action in April 1988. The act provided:
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert as defined in section 49(5), at the time the notice of intent to initiate litigation is filed, which statement shall corroborate reasonable grounds to support the claim of medical negligence. (emphasis added).
Subsequently, the Legislature passed a "glitch" bill (Chapter 88-277, Section 26, Laws of Florida, effective July 5, 1988) changing the word "filed" in the above provision to "mailed." Chapter 88-277 expressly provided that it would not apply to causes arising prior to its effective date.
The plaintiffs served their notices of intent to sue in May, 1988, soon after the death of their child. The defendants promptly, and erroneously, advised the *138 plaintiffs that the notices were invalid because they were not accompanied by the requisite expert corroboration. At that time, however, Chapter 88-1 only required that the corroborating opinion be furnished to the defendants at the time of filing of the notice of intent.[2]
The defendants in the instant case wrongfully refused to provide discovery on the basis they had not been furnished the corroborating opinion at the time they were served the notice of intent. Thus, their subsequent defenses, including that of the two year limitation of actions in section 95.11, were subject to dismissal pursuant to section 52(2), Chapter 88-1, now codified as section 766.205(2), Florida Statutes (1991). Moreover, the defendants' failure to provide discovery based on their misreading of the requirement in section 50, Chapter 88-1 (i.e., they substituted the word "served" for "filed" before the Legislature made the correction the following July) could serve to waive the requirement of written medical corroboration altogether pursuant to the provisions of section 52(3), Chapter 88-1, now codified as section 766.205(3), Florida Statutes (1991).
The plaintiffs below also misconstrued Chapter 88-1 and, based on their misconstruction, refused to provide the defendants with the corroborating opinion. It was their interpretation that Chapter 88-277 had made the requirement inapplicable to all malpractice cases accruing prior to July 5, 1988, without any exception for those accruing between February 8, 1988, and July 5, 1988, as did the instant claim.
On February 21, 1990, the plaintiffs filed their wrongful death action against the defendants Dr. Mussallem, the Physicians Alternate Birthing Home (PABH), Dr. Capili, and Lynda Smith. In that complaint the plaintiffs alleged that all conditions precedent to filing the medical negligence action had been met. In response to the complaint, all defendants claimed the notices of intent mailed to them in May 1988, were invalid, and therefore the complaint must be dismissed with prejudice since by that stage of the case the two year statute of limitations had expired. On that ground, the trial court ultimately entered a summary judgment for Capili and dismissal with prejudice for the other defendants. The reasoning of the trial court was that the failure of the plaintiffs to furnish the corroborating medical expert opinion to the defendants within the applicable statute of limitations was jurisdictional and, therefore, fatal to the plaintiffs' action.
We disagree with the trial court. Even if the defendants' refusal to provide discovery in violation of the statutes did not waive the requirement of a written medical corroboration pursuant to what is now section 766.205(3)  and we do not see why it would not  it is clear from reading Chapter 766 in its entirety that the corroboration required by section 766.203(2), although statutorily required (in this case) to be provided at the same time as the actual filing of the notice of intent in February, 1990, is not part of that notice for jurisdictional purposes. See § 766.203(2)(b).
As argued by the appellants, the very language of the statute itself does not make the corroborative medical opinion part of the notice of intent to sue. Section 766.205(1) refers to the fact that the notice of intent is to be "corroborated by" a medical expert opinion. The word "corroborate" means "to support with evidence."[3] Nothing in the statute makes the opinion an integral part of the notice. Under Chapter 88-1, in effect in April, 1988, there was not even a requirement that the opinion be furnished simultaneously with service of the notice. We also note that notice-of-claim provisions must be strictly construed according to their express language. Levine *139 v. Dade County School Board, 442 So.2d 210, 212 (Fla. 1983); Adventist Health System/Sunbelt, Inc. v. Hegwood, 569 So.2d 1295 (Fla. 5th DCA 1990).
There are disparate purposes underlying the requirement of serving a notice of intent to sue and the requirement of providing a verified written medical expert opinion corroborating reasonable grounds to support a claim of medical negligence. The purpose of a notice of intent to sue is to give the defendant notice of the incident in order to allow investigation of the matter and promote presuit settlement of the claim. The expert corroborative opinion, on the other hand, is designed to prevent the filing of baseless litigation. As stated by the appellants in their brief:
The expert opinion to be supplied is not one which delineates how the defendants were negligent. Section 766.104 refers to a written medical opinion "that there appears to be evidence of medical negligence." Section 766.203(2) provides that the medical expert opinion is for "corroboration of reasonable grounds to initiate medical negligence litigation." And § 766.205(1) specifically provides that the medical opinion need only corroborate that "there exists reasonable grounds for a claim of negligent injury." Obviously, the corroborative medical opinion adds nothing to the Plaintiffs' notice of their claim. It merely assures the Defendants, and the court, that a medical expert has determined that there is justification for the Plaintiffs' claim, i.e., that it is not a frivolous medical malpractice claim. The purpose of the medical expert opinion is to corroborate that the claim is legitimate, not to give notice of it.
In Lindberg, the Florida Supreme Court was faced with essentially the same question which confronts us here: Is a medical malpractice plaintiff's failure to comply with the presuit screening process provided by Chapter 766 within the applicable statute of limitations fatal, as a matter of law, to the plaintiff's cause of action? The supreme court held in Lindberg that the answer to that question is no. It held that the plaintiff could proceed so long as the notice of intent and the complaint were filed within the statutory period.
In that case, the plaintiffs had failed to allege compliance with presuit notice investigation requirements, and the defendants contended that upon expiration of the statute of limitations, the trial court was without subject matter jurisdiction to allow amendment of the complaint to include allegations of compliance with the statutory requirements. The supreme court disagreed with that conclusion, and held that where a complaint and presuit notice are simultaneously filed and served within the applicable statute of limitations, the plaintiff may subsequently (even after expiration of the statutory period) file an amended complaint asserting compliance with the presuit screening process.
It should be noted that the rulings of the trial court in the instant case were based solely on its determination that the plaintiffs' notice of intent to sue was legally insufficient because the plaintiffs "did not provide the Defendants with an expert medical opinion corroborating reasonable grounds to initiate medical malpractice litigation." The trial court did not hold any evidentiary hearings, and its rulings were not based on the failure of a party to provide discovery [see § 766.106(6)] or a determination of the reasonableness of the plaintiffs' presuit investigation [see § 766.206(2)]. No motion seeking a court ruling pursuant to these provisions was filed or heard below. Indeed, it has been represented to us on appeal that the plaintiffs actually acquired the requisite corroborative opinion, although they admittedly did not furnish it to the defendants. It is now within the province of the trial court to determine what penalties to impose upon the respective parties for their various failures and infractions under the confusing requirements of Florida's medical malpractice law. It has subject matter jurisdiction to do so.
Because of our interpretation of the legislation, we need not reach the constitutional issue raised by the appellants. However, it is difficult to understand how a *140 statute can be constitutional which purports to close the courts of Florida to a tort victim unless that victim can produce a supporting opinion from a medical expert, who then is threatened (statutorily) by reprisal from a bureaucratic agency.[4] No such onerous burden is imposed upon any other prospective tort claimant in Florida.
REVERSED and REMANDED for further proceedings consistent with this opinion.
COWART and GRIFFIN, JJ., concur.
NOTES
[1] Now codified as section 766.203, Fla. Stat. (1991).
[2] The service of the notice of intent was a condition precedent to a malpractice action created by section 768.57, Florida Statutes (1985), which is now codified as section 766.106, Florida Statutes (1991). Subsection (4) of the 1985 statute provided that the notice of intent "shall be filed within the time limits set forth in section 95.11." Therefore, as of the time the instant cause of action accrued, there was a statutory requirement that the corroborating medical opinion be provided within the two-year statute of limitations.
[3] Merriam Webster Dictionary.
[4] Section 766.206(5)(a), Florida Statutes (1991) provides:

If the court finds that the corroborating written medical expert opinion attached to any notice of claim lacked reasonable investigation, the court shall report the medical expert issuing such corroborating opinion to the Division of Medical Quality Assurance or its designee. If such medical expert is not a resident of the state, the division shall forward such report to the disciplining authority of that medical expert.