655 So.2d 1151 (1995)
Maria B. TUNNER, M.D., et al., Petitioners,
v.
Margaret D. FOSS, et al., Respondents.
No. 95-224.
District Court of Appeal of Florida, Fifth District.
April 21, 1995.
Rehearing Denied June 14, 1995.
William E. Ruffier of Sanders, McEwan, Martinez, Luff & Dukes, P.A., Orlando, for petitioner Maria B. Tunner, M.D.
Arthur J. Ranson, III, Orlando, for respondents.
W. SHARP, Judge.
Tunner, one of the defendants below, seeks certiorari review by this court of the trial court's order denying Tunner's motion to dismiss because the plaintiff below (Margaret Foss, personal representative of the estate of Edmund Foss) failed to comply with the pre-suit notice requirements for filing a medical malpractice suit. Section 766.106 requires plaintiffs to notify each prospective health-care provider by certified mail of their intent to initiate medical malpractice litigation. See, e.g. Patry v. Capps, 633 So.2d 9 (Fla. 1994); Weinstock v. Groth, 629 So.2d 835, 836 (Fla. 1993); Williams v. Powers, 619 So.2d 980 (Fla. 5th DCA 1993); Stebilla v. Mussallem, 595 So.2d 136, 137 n. 2 (Fla. 5th DCA), rev. denied, 604 So.2d 486 (Fla. 1992). Notices were not made or attempted here. We have jurisdiction.[1]
The issue in this case is whether or not this lawsuit is one for "medical malpractice" as encompassed and defined by section 766.106. The statute defines claims for medical malpractice as ones "arising out of the rendering of, or the failure to render, medical care or services."[2] Section 766.202 further defines "medical negligence" as "medical malpractice, whether grounded in tort or in contract." § 766.202(6), Fla. Stat. (1989).
The pertinent parts of Foss's complaint filed in this cause are as follows:
18. Following his return home, Mr. Foss died the evening of June 27, 1991, with *1152 the immediate cause of death being cardiac arrest due to congestive heart failure, coronary artery disease, renal failure and diabetes. All of these conditions which principally contributed to Mr. Foss' death were present during the one month period of time in which, despite repeated requests, Defendant, Dr. Tunner refused to refer Mr. Foss to a specialist or to hospitalize him for appropriate care consistent with his condition. They were also present when Dr. Tunner discharged Mr. Foss from Lucerne Hospital on May 31, 1991, just a few hours before his Humana Gold coverage expired.
19. Dr. Tunner's failure to obtain reasonable and necessary consultations from specialists/and or hospitalize Mr. Foss for treatment of said conditions was a direct result of the economic arrangement between Humana and Dr. Tunner described above.
* * * * * *
23. The failure of Dr. Tunner to give Mr. Foss such notification and the failure to obtain necessary and reasonable consultations, testing, and hospitalization as a result of her economic self-interest constitutes a breach of the fiduciary duty which she owed to him.
24. As a direct, proximate and reasonably foreseeable result of the above described breach of fiduciary duty, Tunner deliberately denied Foss access to necessary medical care and Mr. Foss' medical condition deteriorated severely over the period of one month rendering him essentially untreatable by the time he was given appropriate care.
* * * * * *
27. As a direct result of said intentional, willful, and fraudulent deception as to said financial arrangements, Edmond O. Foss did not receive complete, adequate and timely medical care and suffered bodily injury and resulting pain and suffering, loss of capacity for the enjoyment of life, and medical expenses for his treatment at Orlando Regional Medical Center and his care by Dr. Scott Greenwood all incurred during the month of June, 1991.
In essence, the plaintiff is alleging in this case that Dr. Tunner refused to render medical care or service, by failing to refer Foss to a specialist or admit him to a hospital. The reason for her failure to do so was her alleged economic self-interest; i.e., she would suffer economic loss if she referred Foss to a specialist, or admitted him to a hospital. This is a nightmare scenario for participants in current health care plans. Pitting a medical doctor's economic self-interest against the welfare of patients creates a classic conflict of interest situation, and is a breeding ground for distrust, harmful to the traditional doctor-patient relationship.
However, the essence of the claim still falls within the umbrella of the medical malpractice statute quoted above. At best, Foss is alleging Dr. Tunner intentionally deprived him of necessary medical care, and that she breached a fiduciary relationship owed to him. These are intentional tort and contract claims. As quoted above, "medical negligence" is defined as "a claim for medical malpractice, whether grounded in tort or in contract."[3] The statute is not limited to negligent acts. See Phillips v. Mease Hospital & Clinic, 445 So.2d 1058 (Fla. 2d DCA), rev. denied, 453 So.2d 44 (Fla. 1984). Nor is the alleged motivation for the treatment or lack of treatment relevant pursuant to section 766.106.
Accordingly we grant Tunner's petition for writ of certiorari and hold that the pre-suit notice and screening requirements of section 766.106 apply to this law-suit. Accordingly, we quash the trial court's order denying dismissal of the complaint, and remand for further proceedings consistent with this opinion.
Petition for Writ of Certiorari GRANTED; Order Denying Dismissal of Complaint QUASHED.
DAUKSCH and GOSHORN, JJ., concur.
NOTES
[1] Shands Teaching Hospital & Clinics, Inc. v. Barber, 638 So.2d 570 (Fla. 1st DCA 1994); Miami Physical Therapy Associates, Inc. v. Savage, 632 So.2d 114 (Fla. 3d DCA 1994).
[2] § 766.106(1)(a), Fla. Stat. (1989).
[3] § 766.202(6), Fla. Stat. (1989).