893 So.2d 690 (2005)
Janice L. VUCINICH, M.D., Appellant,
v.
Eleanor ROSS, et al., Appellee.
No. 5D03-65.
District Court of Appeal of Florida, Fifth District.
February 18, 2005.
*691 Janice L. Merrill and Martin B. Unger, of Unger, Acree, Weinstein, Marcus, Merrill, Kast Metz, P.L., Orlando, for Appellant.
C. Rufus Pennington, III, and Rodney S. Margol of Margol Pennington, P.A., Jacksonville, for Appellee.
THOMPSON, J.
Janice Vucinich, M.D., appeals an order granting a new trial to Eleanor Ross and Scott Gordon Ross, personal representatives of the estate of Gordon Kenneth Ross.
The estate sued Dudley A. Baringer and his professional association, alleging that Baringer, an urgent care physician, negligently failed to diagnose and treat the deceased's heart disease. They also sued Vucinich, a radiologist, alleging that she negligently interpreted the deceased's chest x-ray and failed to advise Baringer of the deceased's heart disease. Baringer settled prior to trial, and the case against him was voluntarily dismissed with prejudice. Vucinich then filed an amended answer, alleging that Baringer's negligence was the cause of the alleged damages. The jury rendered a verdict for Vucinich, but the trial court granted the estate's motion for a new trial because comments *692 by Vucinich's counsel could have implied to the jury that Baringer had settled.[1]
During closing argument, defense counsel told the jury:
The verdict form asks, the first question is "Was there negligence on the part of the Defendant, Janice Vucinich, M.D., which was the legal cause of the death of Gordon Ross? Yes or no?
If the answer is no, if she didn't cause the death of Mr. Ross, then we don't get into the apportionment question.
It's not an issue of you apportioning damages whether you care for or don't care for what Dr. Baringer did; whether you draw any conclusions or don't draw any conclusions from his absence here or that of his partner. That's not for your consideration. No portion of the verdict will ever be paid by them.
(Emphasis added).
In Ed Ricke and Sons, Inc. v. Green, 468 So.2d 908 (Fla.1985), the plaintiff sued two alleged tortfeasors and settled with one of them, Dade County. Although the trial court entered an order in limine precluding the parties from informing the jury of the suit against the county or the settlement, defense counsel told the jury:
Now, there's going to be some other person responsible. I would like for you to ask them some questions. I would like for you to ask him [w]hy Dade County is not a defendant in this litigation.
Id. at 909 (alteration in original). The supreme court agreed that the defendant violated the order in limine on numerous occasions and that the above-quoted was the most flagrant violation, which it deemed "highly prejudicial and improper." Id. at 909. The court explained that it was not just a "traditional empty chair argument," but instead emphasized that there had been "a prior suit against that empty chair." Id.
The supreme court revisited this issue in Ricks v. Loyola, 822 So.2d 502 (Fla.2002), wherein the plaintiff sued Dr. Loyola, another doctor, and a hospital, but settled with the other doctor and the hospital before trial. Defense counsel told the jury:
Now, as Mr. Vieth pointed out, Dr. Loyola is not the only health care provider that you will be hearing about. That is, I gather you've gleaned, from what I've said up to this point, there's going to be testimony that the nurses should have done things differently, that Dr. Wengler should have done things differently, before it ever reached the point of ... of being contracted with permanent nerve damage. It just never should have happened.
It will not be something that you need to consider as to why they aren't in this courtroom, although you might want to ask yourself that question. I assure you, though, that this Miss Ricks and her attorney aren't going to tell you why they aren't here.
Ricks, 822 So.2d at 504 (quoting Loyola v. Ricks, 777 So.2d 423, 424 (Fla. 4th DCA 2000) (emphasis in Ricks)).
The court disagreed with the district court that the "empty chair" comment was an insufficient basis on which to order a new trial. The supreme court stated:

*693 Even though it was Loyola's defense at trial that others were negligent, we find that the objectionable statement could be construed to improperly refer to the underlying reason why those other parties were not involved in the case. Of course, one of the reasons they were not directly involved is because they had settled with the plaintiff.
Id. at 507.
The supreme court pointed out that section 768.041(3), Florida Statutes, provides that releases, covenants not to sue, and dismissals of defendants by order of the court "shall not be made known to the jury," and stated:
[J]urors logically could have interpreted counsel's statement to imply that a settlement had been reached with others involved in the case, despite the fact that counsel did not actually use the word settlement.
Id. at 508. In addition, the court stated, the comment imposed an improper burden on the plaintiff to explain why the others were not present in the courtroom and parties to the suit. Id. The court stated that the defendant not only emphasized that there was an empty chair by discussing the parties' absence, but insinuated that the plaintiff was responsible for their absence and was improperly withholding an explanation. Id. at 508.
The trial court granted the motion for new trial based on Ricks, but Vucinich argues that the trial court abused its discretion in ordering a new trial because counsel made only one passing reference to Baringer. She infers from Cenvill Communities, Inc. v. Patti, 458 So.2d 778 (Fla. 4th DCA 1984), that as long as a reference to a third party does not include the word "settlement," and as long as the reference does not become a "feature" of the trial, it is an abuse of discretion to order a new trial. However, in Ricks, which was decided after Cenvill, counsel did not directly tell the jury about the settlement either. See Ricks, 822 So.2d at 508 ("Here, jurors logically could have interpreted counsel's statement to imply that a settlement had been reached with others involved in the case, despite the fact that counsel did not actually use the word `settlement.'").
Furthermore, the district court reversed the order granting a new trial because:
Section 768.041(3), Florida Statutes, provides that releases, covenants not to sue, and dismissals of defendants by order of the court "shall not be made known to the jury." § 768.041(3), Fla. Stat. (2000). In the present case, the defense counsel's comment during opening statements did not reference any of the prohibited categories. No reference was made to a prior lawsuit, prior defendants, or a settlement. In addition, the jury was unaware that Dr. Wengler and the hospital were originally in the lawsuit, and therefore, they would not have necessarily thought the comment referenced a settlement. Moreover, even if the comment was error, we would find it to be harmless. The comment was isolated and never mentioned again by the defense.
Loyola, 777 So.2d at 425. The supreme court criticized the district court decision:
Thus, the Fourth District failed to accord the trial court's ruling the broad discretion it merited and minimized the impact that such an "empty chair" argument may have on a jury by finding that the comment did not reference settlement with other parties, or that if it did, that the error was harmless.
Ricks, 822 So.2d at 508.
Next, Vucinich argues that defense counsel's remarks were appropriate because *694 she asserted a Fabre[2] defense rather than an "empty chair" defense. In Phillips v. Guarneri, 785 So.2d 705, n. 1 (Fla. 4th DCA 2001), the court explained a party's use of the term "Fabre Affirmative Defenses" by stating: "Fabre defendants are non-parties which are alleged by a party defendant to be wholly or partially negligent and should be placed on the verdict form so there can be an apportionment of fault against them for non-economic damages...." On the other hand, the term "empty chair" refers to the argument that "some non-party is the sole legal cause of the harm alleged but, unlike a Fabre defendant, this non-party is not placed on the verdict form and there is no apportionment of fault." Id. at n. 4. Even assuming that in Ricks there were no "Fabre defendants," we do not agree with Vucinich. The harm done by mentioning settlements is that the jury may believe that "where there has been a payment there must have been liability." City of Coral Gables v. Jordan, 186 So.2d 60, 63 (Fla. 3d DCA 1966) (quoting Fenberg v. Rosenthal, 348 Ill.App. 510, 109 N.E.2d 402, 405 (1952)). That harm arises whether the defense is that of the "empty chair" defense as it is defined in Guarneri or that allowed under Fabre.
Next, Vucinich argues that her argument was not improper because it addressed causation rather than comparative fault, and her argument fairly commented on her affirmative defense and damages. Vucinich asserts that her argument was made in response to the estate's argument to the jury: the estate conceded that Baringer and the deceased himself bore some responsibility, and the estate told the jury that the estate would not collect all of the damages determined by the jury because the court would reduce the damages by the comparative fault assigned to Baringer and the deceased. Vucinich argues that if the estate was allowed to tell the jury that the estate would not receive the entire amount of damages, she should have been allowed to tell the jury that Vucinich alone would pay for the amount of damages attributed to her. In response to this argument, the estate points out that what it told the jury was in the jury instructions: "In determining the amount of damages, do not make any reduction in the amount of damages because of the negligence, if any, of Dudley A. Baringer, M.D., Dudley A. Baringer, M.D., P.A., d/b/a Healing Arts Urgent Care Center, or Gordon Ross [the deceased]."[3] The estate points out that the jury was not instructed that Baringer had settled, and that it was improper for Vucinich to raise the issue with the jury.
We think the estate is correct on this point. Telling the jury that Baringer was not going to pay any part of the damages is not designed to inform the jury that Vucinich alone would be paying the damages ascribed to her, and calling the jury's attention to the fact that Baringer was not a defendant was not relevant to apportionment or causation. It is true that Vucinich's comments were couched within a discussion of apportionment and causation, but they still violated Ricks. As the court stated in Ricks,"Even though it was Loyola's defense at trial that others were negligent, we find that the objectionable statement could be construed to improperly refer to the underlying reason why those *695 other parties were not involved in the case." 822 So.2d at 507.
Although there are differences between the instant case and Ed Ricke and Sons and Ricks, the similarities constrain us to affirm the order granting a new trial. In the instant case, Vucinich's counsel told the jury that Baringer would not pay any portion of the verdict, and thus hinted that Baringer had settled. He also invited the jury to ask itself why Baringer was not in court by stating, "It is not an issue of you apportioning damages whether you care or don't care for what Dr. Baringer did; whether you draw any conclusions or don't draw any conclusions from his absence here or that of his partner." Although counsel said, "That is not for your consideration," it cannot be said that the latter statement cured the improper statements because in Ricks, the defense attorney similarly put the point in the negative: "It will not be something that you need to consider ... although you might want to ask yourself that question." 822 So.2d at 504.
Vucinich next argues that the trial court erred in allowing hearsay evidence. Baringer's employee, who had spoken to the deceased's wife about the deceased's x-ray, testified that she had been instructed to review the x-ray book when a patient telephoned for x-ray results, and if the log showed that a cardiac condition had been diagnosed, she was to instruct the patient to go directly to the emergency room. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. § 90.801(1)(c), Fla. Stat. The court properly allowed the testimony because the instructions given to the employee did not make an assertion. Compare Diaz v. State, 890 So.2d 556 (Fla. 5th DCA 2005).
Finally, Vucinich argues that the court erred in denying her motion for directed verdict. The essence of Vucinich's argument is that her failure to log an enlarged heart could not have affected the outcome because Baringer, the urgent care practitioner, was already aware that the deceased's heart was enlarged. In Goolsby v. Qazi, 847 So.2d 1001 (Fla. 5th DCA 2003), we stated that we agreed with the majority in Munoz v. South Miami Hospital, Inc., 764 So.2d 854, 857 (Fla. 3d DCA 2000), which stated that a defendant cannot claim the defendant's failure to warn had no effect on the outcome when, if the defendant had made the proper warning, we would know for sure whether the outcome would have been affected:
[I]t is not for the defendants, who putatively violated their standard of care by failing to warn, to argue that their not doing so had no effect on the situation, when their doing the appropriate thing would have removed all doubt. As was said in Seley v. G.D. Searle & Co., [67 Ohio St.2d 192, 423 N.E.2d 831 (Ohio 1981)]:
And it is not for the defendants, who putatively violated their standard of care by failing to warn, to argue that their not doing so had no effect on the situation, when their doing the appropriate thing would have removed all doubt. As was said in Seley v. G.D. Searle & Co., [67 Ohio St.2d 192, 423 N.E.2d 831 (Ohio 1981)]:
[O]nly speculation can support the assumption that an adequate warning, properly communicated, would not have influenced the course of conduct adopted by a physician, even where the physician had previously received the information contained therein. "What the doctor might or might not have done had he been adequately warned is not an element plaintiff must prove as a part of her case." *696 67 Ohio St.2d [192,] 201, 423 N.E.2d at 839 (footnote omitted) (quoting Hamilton v. Hardy, 37 Colo.App. 375, 387, 549 P.2d 1099, 1109 (1976), overruled on different grounds by State Bd. of Medical Examiners v. McCroskey, 880 P.2d 1188 (Colo.1994)).
Accordingly, no error having been shown, the order granting a new trial is affirmed.
AFFIRMED.
PETERSON and ORFINGER, JJ., concur.
NOTES
[1] The estate objected when defense counsel made the remarks, and the trial court reserved ruling until after the verdict, as authorized by Ed Ricke & Sons, Inc. v. Green, 468 So.2d 908, 910 (Fla.1985) ("it is quite reasonable for a trial judge to reserve ruling until after the jury deliberates in the hope that the jurors can rise above the alleged prejudice and cure the error").
[2] See Fabre v. Marin, 623 So.2d 1182 (Fla.1993) (holding that fault must be apportioned among all responsible entities who may have contributed to an accident, even though not all of them have been joined as defendants).
[3] See Fla. Std. Jury Instr. (Civil) 8.1.