947 So.2d 614 (2007)
Esteva E. MICHAEL, as Personal Representative of the Estate of Claude S. Michael, deceased, Appellant,
v.
MEDICAL STAFFING NETWORK, INC., d/b/a All Better Nursing and Milton McCall, R.N., et al., Appellees.
No. 3D05-2878.
District Court of Appeal of Florida, Third District.
January 10, 2007.
*615 Gamba & Lombana and Tomas F. Gamba and Hector J. Lombana; Billbrough & Marks and Geoffrey B. Marks and G. Bart Billbrough, Miami, for appellant.
Carlton Fields and Sylvia H. Walbolt, Tampa, and F. Townsend Hawkes, Tallahassee, and Dean A. Morande, West Palm Beach, for appellees.
Before FLETCHER and CORTIAS, JJ., and SCHWARTZ, Senior Judge.
CORTIAS, Judge.
In this appeal, we must review whether the trial court correctly interpreted this court's prior opinion in Largie v. Gregorian, 913 So.2d 635 (Fla. 3d DCA 2005), as well as the Florida Supreme Court's opinion in Kukral v. Mekras, 679 So.2d 278 (Fla.1996), to require a certain level of specificity in naming prospective defendants in corroborating medical expert affidavits served in medical malpractice actions, pursuant to chapter 766, Florida Statutes (2004).
*616 This case arises from the following facts. On February 5, 2002, Claude S. Michael, the decedent, went to Jackson South Community Hospital ("Jackson South") to receive treatment for a laceration on his forehead. He was admitted to the hospital overnight for observation. During his overnight stay, Mr. Michael began complaining of chest pains. A nurse gave him five doses of nitroglycerin during the course of the night without obtaining a doctor's order or otherwise consulting with a doctor. The following morning, Mr. Michael's doctor became aware of his chest pains and diagnosed Mr. Michael with a myocardial infarction. Mr. Michael was transferred to Jackson South's intensive care unit and then to South Miami Hospital. Mr. Michael passed away later that day at South Miami Hospital.
Prior to the expiration of the statute of limitations, Esteva Michael, the wife of Mr. Michael and personal representative of his estate ("the Plaintiff"), served Jackson South and two doctors who treated Mr. Michael with a notice of intent to initiate litigation pursuant to chapter 766, Florida Statutes. This notice named the prospective defendants as "the Public Health Trust d/b/a Jackson South Community Hospital, and its employees and actual and apparent agents." Consistent with Rule 1.650(b) of the Florida Rules of Civil Procedure, the notice also indicated that it "operates as notice to any other prospective defendant who on the above date bore a legal relationship to the Public Health Trust d/b/a Jackson South Community Hospital, including any of its agents and/or employees." See Fla. R. Civ. P. 1.650(b). The notice indicated the prospective defendants' obligation to participate in informal discovery, and specifically requested information on any other person or entity the prospective defendants contend may be responsible for the negligence. Paragraph 5 of the notice stated as follows:
If you contend that someone other than your agents and/or employees were responsible, in whole or in part, for the occurrence of the negligence that is being alleged by Esteva Michael, as the Personal Representative of the Estate of Claude Michael, please state each such person or entity's name, address, job title, along with the facts upon which you base your contention that he, she or the entity was responsible.
In addition to sending this notice, the Plaintiff also sent Jackson South a medical expert affidavit indicating that a reasonable investigation into the claim had been conducted. Paragraph 9 of the medical expert affidavit stated:
Specifically, it is my professional opinion, within a reasonable degree of medical probability, that there was a deviation from the accepted standard of care in the care and treatment of Michael S. Claude by the aforementioned physicians and medical providers[[1]] who committed medical negligence which caused and/or substantially contributed to the death of Michael S. Claude, and which included, but was not limited to, the following manner:
a) Failure to timely and appropriately recognize and appreciate Michael S. Claude's myocardial infarction and related symptoms including, but not limited to, at least five (5) episodes of angina;

*617 b) Failure to timely and appropriately evaluate Michael S. Claude's myocardial infarction and related symptoms including, but not limited to, ordering additional diagnostic studies including EKGs, cardiac enzymes and cardiology consult;
c) Failure to provide timely and appropriate care and treatment and intervention for Michael S. Claude's myocardial infarction and related symptoms; and
d) Failure to transfer Michael S. Claude to another hospital and/or facility in a timely manner.
Despite being served with these documents which specifically outlined the basis of the malpractice claim, and specifically requested information as to any other parties involved in the negligence, and despite having an independent legal obligation to disclose such discoverable information, Jackson South delayed for almost an entire year in providing the Plaintiff with the name of the nurse it contends administered the nitroglycerin doses. Instead of abiding by the two agreed-upon extensions of the pre-suit period and their promise to make available medical personnel for sworn statements, Jackson South abruptly denied the Plaintiff's claim, thereby ending the pre-suit period.[2] Accordingly, the Plaintiff filed suit against Jackson South and the two doctors whose names were known, and immediately propounded interrogatories seeking to discover the name of the party responsible for administering the nitroglycerin. Interestingly, the doctors asserted Fabre defenses,[3] and stated in depositions that they could not discern the initials of the nurse who recorded the nitroglycerin doses in the decedent's medical records nor did they independently recall the identity of that person.
In December 2004, some ten months after first receiving notice of the claim, Jackson South finally advised the Plaintiff that Milton McCall ("McCall") was the nurse they contend administered the nitroglycerin. Jackson South also disclosed that McCall was employed by Medical Staffing Network ("MSN"), with whom Jackson South had contracted. Immediately upon receiving this information, the Plaintiff sought leave to file an amended complaint to include counts against MSN and McCall. MSN and McCall opposed the Plaintiff's attempt to amend the complaint, alleging that the Plaintiff failed to comply with the pre-suit notice requirement. The trial court allowed the Plaintiff to file an amended complaint, and denied MSN and McCall's motion to dismiss the amended complaint on the same ground. Subsequently, MSN and McCall moved for summary judgment, arguing that the pre-suit notice was defective. After a hearing, the trial court granted their motion and entered summary judgment in their favor.
Upon review of the trial court's order and the transcript of the summary judgment hearing, it is evident that the trial court was primarily concerned with the sufficiency of the medical expert affidavit. The trial court found that the issue of service of the notice and affidavit required a determination as to "agency" and the *618 "issue of control." As the trial court did not decide whether there was a legal relationship between Jackson South, the defendant who received the notice of intent, and MSN and McCall, we remand for such a determination. The finding of such a relationship is relevant to determine whether service on Jackson South could be imputed to MSN and McCall, pursuant to Rule 1.650(b) of the Florida Rules of Civil Procedure.
Directly relevant to this appeal is the trial court's finding that both the medical expert affidavit and the notice of intent failed to refer to McCall with sufficient specificity.

The Medical Expert Affidavit
The trial court interpreted this court's decision in Largie to require that the medical expert affidavit and notice of intent list either a name, job title, or job description for each prospective defendant. Because the medical expert affidavit in this case references McCall only as a "health care provider" the trial court found it insufficient as a matter of law.[4] We review an appeal from an order granting summary judgment de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000).
Chapter 766, Florida Statutes, was enacted because the Florida Legislature recognized that large medical malpractice recoveries had caused medical malpractice liability insurance premiums to rise, thereby causing medical care costs to patients to increase and making medical malpractice liability insurance unavailable to some doctors. ß 766.201(a)-(b), Fla. Stat. (2004). The Legislature specifically found:
The high cost of medical negligence claims in the state can be substantially alleviated by requiring early determination of the merit of claims, by providing for early arbitration of claims, thereby reducing delay and attorney's fees, and by imposing reasonable limitations on damages, while preserving the right of either party to have its case heard by a jury.
ß 766.201(d), Fla. Stat. (2004). Accordingly, the Legislature set forth a detailed procedure for initiating complaints against medical providers arising out of negligence in medical care. Prior to initiating litigation, a plaintiff must mail to the prospective defendants a notice of intent to initiate litigation and a medical expert affidavit. ß 766.203(2), Fla. Stat. (2004). The purpose of the notice of intent is to notify the prospective defendants of a potential claim against them, so that they can begin an investigation into their involvement and timely determine whether settling the claim would be appropriate. See Kukral, 679 So.2d at 282 (quoting Stebilla v. Mussallem, 595 So.2d 136, 139 (Fla. 5th DCA 1992)). The purpose of the medical expert affidavit is to assure the defendant(s) that the claim is "not a frivolous medical malpractice claim." Id. "Obviously, the corroborative medical opinion adds nothing to the Plaintiffs' notice of their claim." Id.
In Kukral, the Florida Supreme Court recognized the express legislative purpose behind chapter 766, but instructed that the statute should be construed liberally, in favor of access to courts, a right guaranteed by the Florida Constitution. Kukral, 679 So.2d at 284; see also Weinstock v. Groth, 629 So.2d 835, 838 (Fla.1993); Patry v. Capps, 633 So.2d 9, 11, 13 (Fla.1994). Accordingly, courts throughout the state *619 have liberally construed the requirements of the statute so as not "to deny parties access to the courts on the basis of technicalities." Faber v. Wrobel, 673 So.2d 871, 873 (Fla. 2d DCA 1995) (citation omitted). However, there is an increasingly disturbing trend of prospective defendants attempting to use the statutory requirements as a sword against plaintiffs.
In Largie, we considered the sufficiency of a medical expert affidavit. Largie, 913 So.2d at 637. In that case, the medical expert affidavit indicated that two named doctors deviated from the standard of care by failing to "do a follow up to [the patient's] elevated PSA." Id. The affidavit did not indicate the possibility that any other medical personnel may have been involved, nor did it indicate that the medical expert who signed the affidavit had conducted an investigation into a breach of the standard of care on the part of any other medical personnel. Id. Accordingly, when the patient/plaintiff filed suit against the two named doctors and an unreferenced nurse, the trial court dismissed the nurse from the suit. Id. Although the nurse was properly served with the notice of intent and medical expert affidavit during the pre-suit period, the trial court in Largie held that "each defendant has a right and you have an obligation as plaintiff's lawyer to do a separate investigation as to each one and you must provide a separate affidavit as to the negligence of everybody that you claim was negligent [and y]ou haven't done it here." Id. at 638. However, this court, in affirming the trial court's holding, did not go quite as far. Instead, we noted that "an investigation consists of: (1) review of the case against each potential defendant; (2) consultation with a medical expert; and; (3) written corroboration of negligence by a medical expert." Id. We also recognized that the requirement of a medical expert affidavit "assures the defendant that the claim was preceded by a reasonable investigation; `that there is justification for the Plaintiff's claim, i.e., that it is not a frivolous medical malpractice claim . . . [; and] that the claim is legitimate.'" Id. at 639 (quoting Kukral, 679 So.2d at 284). We concluded, however, that the affidavit in the case did not fulfill its purpose as it "ma[de] no mention of [the nurse] whatsoever, either by name or job description." Id.
[I]t ma[de] no reference to the standard of care applicable to a certified registered nurse practitioner or to any deviation from that standard of care; and, it d[id] not suggest, much less corroborate, that any investigation took place with regard to [the nurse] or that any reasonable grounds exist to support the [plaintiffs'] claim against her as expressly mandated by Chapter 766.
Id. As a result, this court concluded that "while the [plaintiffs'] expert affidavit may be sufficient as to the physicians named in it, it fails to demonstrate any investigation as to [the nurse] and is wholly insufficient." Id.
Given this language and the facts of Largie, we find the trial court misinterpreted Largie as establishing a blanket requirement for medical expert affidavits to contain a name, job title, or job description for each prospective defendant. Such a requirement is inconsistent with the purpose of chapter 766, as explained above, and is contrary to the plain reading of the language of the statute.
Nowhere does the statute indicate that an affidavit must be defendant-specific. As the Fourth District has explained, "nothing in the statute requires that the corroborating expert opinion identify every possible instance of medical negligence." Columbia/JFK Med. Ctr. Ltd. P'ship v. Brown, 805 So.2d 28, 29 (Fla. 4th DCA 2001)(noting the difficulty of such a requirement *620 at the pre-suit stage and recognizing that "such crucial issues as causation and proximate cause often defy tidy identification and resolution as surgical patients commonly receive care from a battery of physicians, nurses and staff").
While the statute requires a claimant to investigate the claims against each defendant, it does not require the affidavit to attest to the legitimacy of each claim against each defendant. Instead, section 766.203(2), Florida Statutes, indicates that "[c]orroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert. . . ." ß 766.203(2), Fla. Stat. (2004)(emphasis added). Further, section 766.205(1) refers to the requirement of an investigation "corroborated by medical expert opinion that there exist reasonable grounds for a claim of negligent injury." ß 766.205(1), Fla. Stat. (2004)(emphasis added). Thus, "[t]he expert opinion to be supplied is not one which delineates how the defendants were negligent." Kukral, 679 So.2d at 282 (quoting Stebilla v. Mussallem, 595 So.2d 136, 139 (Fla. 5th DCA 1992)).
Given the language and purpose of the statute, Largie must be interpreted to hold only that a medical expert affidavit must sufficiently demonstrate that a reasonable investigation into the claim was undertaken. The appearance of a name, job title, or job description in the affidavit is simply one way of showing that a reasonable investigation was done. In contrast to the affidavit in Largie, the affidavit at issue in this case makes clear that health care providers, in addition to the named doctors, contributed to the malpractice, that a reasonable investigation was done into those health care providers, albeit not by name, and that a qualified medical expert found that those health care providers also violated a duty of care in their treatment of the decedent. Thus, even though Nurse McCall was not identified by name, job title, or job description, the affidavit indicates a reasonable investigation was done into the claims, including the claims asserted against Nurse McCall. In other words, a medical expert concluded that the Plaintiff's claims were not baseless. This evidence of a reasonable investigation is sufficient, especially where, as here, the defendant failed to disclose the actual name, job title, or job description of the nurse and staffing agency involved.
The Fifth District recently reached the same conclusion we reach today on facts very similar to the case at hand. See Mirza v. Trombley, 946 So.2d 1096 (Fla. 5th DCA 2006). In Mirza, the Fifth District concluded that the reading of Largie urged by the defendant, that an affidavit must individually name all defendants, was inconsistent with both the language and the purpose of chapter 766. Id. at 1098-99. In reaching that conclusion the Fifth District focused, as we do, on three points. Id. at 1100. First, the language of the statute focuses on corroboration of the claims, not corroboration of each defendant's involvement. Id. at 1100. Second, the purpose of the affidavit is not to provide notice to each defendant about the claims; it is simply to corroborate that the claim is legitimate. Id. In some cases, like the one at hand, it is not necessary to identify by name, job title or job description each prospective defendant in order to do a reasonable investigation into their involvement, especially when that information is unavailable to the plaintiff. Id. at 1100 (holding that "failure to individually name a particular defendant is not fatally defective, so long as the affidavit otherwise makes it clear that the defendant's actions were properly reviewed and determined to be negligent prior to filing suit"). Third, a strict specificity requirement would be inconsistent *621 with the Florida Supreme Court's mandate that chapter 766 "`be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to courts. . . .'" Id. at 1101 (quoting Kukral, 679 So.2d at 284).

The Notice of Intent to Initiate Litigation
Because we disagree with the trial court's interpretation of Largie as requiring such specificity in medical expert affidavits, we also disagree with the trial court's extension of Largie to notices of intent, for many of the same reasons. In addition to our concern that such a requirement would be inconsistent with the statutory language and purpose of chapter 766, such a requirement would also directly conflict with Rule 1.650(b) of the Florida Rules of Civil Procedure. As discussed above, Rule 1.650(b) provides that notice to any prospective defendant can be imputed to those persons or entities in a legal relationship with the noticed defendant. See Fla. R. Civ. P. 1.650(b); see also Arch Plaza v. Perpall, 947 So.2d 476, 2006 WL 3208556 (Fla. 3d DCA Nov. 8, 2006). If the Legislature has chosen to allow notice to be imputed to defendants who are not served, we see no reason why the notice should have to name each of those parties individually. Thus, we think the trial court's determination of whether a legal relationship exists between Jackson South and MSN and McCall will be dispositive as to this issue. In other words, defendants to whom notice can be imputed under Rule 1.650(b) do not need to be listed separately in the notice of intent.
Because we agree with the reasoning of the Fifth District in Mirza, and for the reasons we explained above, we reverse the trial court's order granting summary judgment in favor of defendants McCall and MSN and remand for further proceedings consistent with this opinion.
Reversed.
NOTES
[1] The notice listed "Jackson South Community Hospital and their agents servants and/or employees," Camille Baptiste-Smith, M.D., Camille Baptiste-Smith, M.D., P.A., Stuart Joseph, M.D., Stuart Joseph, M.D., P.A., and "any other health care providers who may [have] rendered care and treatment to Michael S. Claude and any entities that may be vicariously liable for their actions and/or omissions."
[2] Jackson South's denial was accompanied by its own medical expert affidavit which concluded that "the medical Care and treatment rendered to Claude S. Michael met the standard of care For physicians and nurses within this community, and their actions didn't cause Neither contributed to the patient's demise on 2/6/02 [sic]."
[3] The term Fabre defense refers to a defendant's contention that a non-party defendant is wholly or partially responsible for the negligence alleged. See Kay's Custom Drapes, Inc. v. Garrote, 920 So.2d 1168 (Fla. 3d DCA 2006)(citing Fabre v. Marin, 623 So.2d 1182 (Fla.1993) and Vucinich v. Ross, 893 So.2d 690, 694 (Fla. 5th DCA 2005)).
[4] We note that the term "health care provider" is defined by statute and, therefore, was used by the Plaintiff as a term of art, not as a vague catch-all. See ß 766.202(4), Fla. Stat. (2004).