FULMER, Judge.
In this medical malpractice action, Duane M. Overholt contests a final summary judgment entered by the trial court on behalf of the defendants, Henrique B. Neto, M.D., and Morton Plant Mease Health Care, Inc., on the ground that the suit was barred by the statute of limitations. We reverse because we conclude that there remains a genuine issue of material fact as to the date that Overholt had knowledge of the injury required to trigger the statute of limitations.
On December 31, 1994, Overholt presented to the emergency room at Mease Countryside Hospital with severe abdominal pain. An initial diagnosis of appendicitis was made, and surgery was performed by Dr. Neto. During the surgery, Dr. Neto encountered inflammatory bowel disease and performed a bowel resection operation in addition to removing Overholt’s appendix. There is no indication in the hospital records that the bowel resection surgery was explained to Overholt. And, Overholt contends that Dr. Neto did not inform him that a portion of his intestine had been resected. Overholt was given discharge instructions to return to work full time. Two days later, Overholt collapsed at work and was taken back to the hospital. Upon his readmission, a nurse completed a patient history form and indicated that Over-holt had one foot of bowel removed in the prior surgery.
After the surgery, Dr. Neto referred Overholt to a gastroenterologist, Dr. Pee-bles, for treatment of his inflammatory bowel disease, commonly known as Crohn’s disease. Later in 1995, Overholt began seeing another gastroenterologist, Dr. Zelig. Both Drs. Peebles and Zelig treated Overholt only for Crohn’s disease.
In June 1998, Overholt was diagnosed by Jon Beasley, M.D., with “shortened bowel syndrome,” related to the bowel resection operation. He filed a notice of intent to litigate on December 23, 1998, and filed his complaint on May 14, 1999.
Section 95.11(4)(b), Florida Statutes (1993), provides for a two-year statute of limitations in medical malpractice actions. The statute provides, in part:
An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the ac *591 tion occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however, in no event shall the action be commenced later than 4 years from the incident or occurrence out of which the cause of action accrued.
The statute is triggered when a plaintiff has knowledge of the injury and knowledge of the reasonable possibility that the injury was caused by medical malpractice. Tanner v. Hartog, 618 So.2d 177, 181 (Fla.1993).
Overholt contends that it was not until the diagnosis was made in June 1998 that he had reasonable knowledge that he suffered an injury, an unwarranted bowel resection, in the December 1994 surgery. The trial court rejected this contention, and concluded that “the facts as represented through the ... medical providers showed [Overholt] had knowledge, or should have had knowledge, of the small bowel resection as early as January 7, 1995, and as late as November 22, 1995.” The trial court relied upon deposition testimony of the nurse who readmitted Over-holt to the hospital and Drs. Peebles and Zelig to conclude that Overholt knew he had undergone the bowel resection surgery. However, the testimony of these witnesses was ambiguous as to whether Overholt knew of the nature of the prior surgery and was contradicted by Over-holt’s testimony.
None of the medical providers referenced in the trial court’s order had an independent recollection of Overholt, and all gave testimony based on their common practices. For example, the trial court made a finding of fact that: “Nurse Taidi testified she obtained the information in the Data Base form from [Overholt].” However, in her deposition, Nurse Taidi testified that, according to her customary practice, everything she wrote on the form would have been something the patient told her. She also acknowledged that she had no recollection of her contact with Overholt and that she uses information from charts and past records to obtain information if she is unable to get it from the patient.
As another example, the trial court relied on the testimony of Dr. Zelig to conclude that November 22, 1995, is the latest' date that Overholt would have had knowledge of the bowel resection'. This conclusion is based on a finding of fact thát: “Michael Zelig, M.D., testified that he would have discussed the removal of the ileum and cecum with [Overholt] at the time he went through [Overholt’s] medical records during their initial visit.” However, the deposition of Dr. Zelig reflects that although he testified that he would have reviewed Overholt’s medical history with him, Dr. Zelig had no independent recollection of the original meeting with Over-holt, and his report did not indicate that he discussed with Overholt what happened in the 1994 surgery. Such testimony, based on customary practice instead of specific recollection, does not'establish, as undisputed, the trial court’s findings of fact. Neither does this "testimony conclusively refute the conflicting testimony presented by Overholt in opposition to the motions for summary judgment. In a summary judgment proceeding, the trial court is not at liberty to act as a finder of fact by weighing conflicting testimony. See Moore v. Morris, 475 So.2d 666, 668 (Fla.1985).
As an additional basis for granting summary judgment, the trial court cited Menendez v. Public Health Trust of Dade County, 566 So.2d 279 (Fla. 3d DCA 1990), approved, 584 So.2d 567 (Fla.1991), and concluded, as a matter of law, that “[Over-holt] is deemed to have constructive notice of the contents of medical records that *592 disclose a possible negligent act.” Menendez cited to Nardone v. Reynolds, 333 So.2d 25 (Fla.1976), for the proposition that “[a] plaintiff who lacks actual knowledge of negligence is deemed to have constructive notice of the contents of medical records that disclose a possibly negligent act.” Menendez, 566 So.2d at 281. However, Nardone did not create or even recognize a per se rule that knowledge of one’s medical records disclosing a possible negligent act is imputed to every plaintiff. Rather, the Nardone court found that “under the peculiar facts of this case,” knowledge of the medical records “should be imputed to the [plaintiffs].” Nardone, 333 So.2d at 34. Thus, we conclude that the constructive knowledge rule applied in Nardone must be applied on a case-by-case basis within the context of the applicable facts.
In Doe v. Hillsborough County Hospital Authority, 816 So.2d 262, 265 (Fla. 2d DCA 2002), this court recently explained: “In Nardone and the other cases applying the constructive notice rule, some physical injury or medical condition or event had placed the plaintiff in a posture where the plaintiff could reasonably' have been expected to consider the .need to examine medical records.” In this case, Overholt claims that he was advised that his ongoing medical problems were attributed to his Crohn’s disease and that he was not advised by any physician until 1998 that his condition was related to his bowel resection surgery. Thus, we cannot conclude that Overholt could reasonably have been expected to consider the need to examine his medical records. Furthermore, we cannot conclude as a matter of law that Dr. Neto’s notation that he performed a “resection of the distal ileum and cecum” or Nurse Taidi’s notation of recent surgery in which a foot of bowel was removed were sufficient to furnish notice of negligence. This case appears to be one of those cases to which the Tanner court was responding when it held:
[Knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
Tanner, 618 So.2d at 181-82.
The Tanner court expressly recognized that its holding would make it harder to decide as a matter of law when the statute begins to run and might often require a fact finder to make that determination. After reviewing the record, we conclude that the issue of when Overholt knew or should have known that medical malpractice may possibly have occurred cannot be determined as a matter of law. Because a genuine issue of material fact exists as to when the statute of limitations began to run, we reverse.
Reversed and remanded for further proceedings.
NORTHCUTT and CASANUEVA, JJ., Concur.