994 So.2d 402 (2008)
Julia GONZALEZ, Appellant,
v.
James F. TRACY, D.P.M. and Westchester General Hospital, Appellees.
No. 3D07-2417.
District Court of Appeal of Florida, Third District.
October 22, 2008.
David H. Pollack, for appellant.
Falk, Waas, Hernandez, Cortina, Solomon & Bonner and Paul H. Field, Coral Gables, for appellee James F. Tracy, D.P.M.; Bunnell Woulfe Kirschbaum Keller & Gregoire, and Nancy W. Gregoire and John A. Campbell, III, Fort Lauderdale, *403 for appellee Westchester General Hospital.
Before RAMIREZ and ROTHENBERG, JJ., and SCHWARTZ, Senior Judge.
ROTHENBERG, J.
The plaintiff, Julia Gonzalez, appeals the entry of final summary judgment in favor of defendants, James F. Tracy, D.P.M. and Westchester General Hospital, Inc. ("Westchester General"), based on the trial court's finding that Gonzalez failed to comply with the medical malpractice presuit requirements of chapter 766, Florida Statutes (2006), within the two-year limitations period. We reverse.

I. Facts
The facts, viewed in the light most favorable to Gonzalez as the non-moving party, are as follows. Dr. Tracy informed Gonzalez that she had four lipomas (benign fatty tumors) that needed to be surgically removed from her ankle, and on November 22, 2004, Dr. Tracy surgically removed the lipomas. Thereafter, Gonzalez was seen by Dr. Tracy approximately every fifteen days for one year, and during each visit, Gonzalez complained of pain. Throughout most of 2005, Dr. Tracy told Gonzalez that her pain was the result of plantar fasciitis,[1] and that the pain would subside. At the end of 2005, Dr. Tracy referred Gonzalez to a neurologist. In February 2006, the neurologist performed tests on Gonzalez, and in March 2006, the neurologist informed Gonzalez that her pain was caused by a nerve that was severed during the surgery, not plantar fasciitis.
On October 2, 2006, pursuant to section 766.102, Gonzalez served Dr. Tracy and Westchester General with a Notice of Intent to Initiate Litigation for Medical Malpractice, which was accompanied by the corroborating medical expert opinion of Dr. Edward Lazzarin and his curriculum vitae. Dr. Lazzarin's affidavit, dated September 29, 2006, states, in part, that he is a licensed physician with a specialty in orthopedic surgery; Dr. Tracy's treatment fell below the standard of care; and the pre-operative tests did not indicate that Gonzalez had a tissue mass, and therefore, surgery was not warranted. During the ninety-day presuit period, Dr. Tracy advised Gonzalez that Dr. Lazzarin's affidavit failed to satisfy the requirements of sections 766.102, 766.202, and 766.203, Florida Statutes (2006).
On January 16, 2007, Gonzalez filed a medical malpractice complaint alleging, in part, that Dr. Tracy performed unnecessary surgery resulting in physical injury and damages, and that Westchester General was vicariously liable. Dr. Tracy moved to dismiss the complaint, asserting, in part, that Gonzalez failed to comply with the mandatory presuit requirements.
Thereafter, on April 6, April 30, and July 11, 2007, Gonzalez filed supplemental corroborating affidavits executed by Dr. Lazzarin. In the affidavit filed on April 6, Dr. Lazzarin averred that as an orthopedic surgeon, he is qualified to perform the surgery performed on Gonzalez, and that the surgery can be performed by either an orthopedic surgeon or podiatrist. In the affidavit filed on April 30, Dr. Lazzarin stated that he has experience diagnosing and treating the medical condition which is the subject of the lawsuit, he has experience treating patients similar to Gonzalez, and he has performed the same type of surgery that Dr. Tracy performed on Gonzalez. Moreover, the affidavit filed on July *404 11 states in part: "In the last three years, I have devoted professional time to an active clinical practice that includes the evaluation, diagnosis and treatment of the same or similar medical condition that is the subject of the claim by Julia Gonzalez."
The defendants moved for summary judgment, arguing that Gonzalez failed to fully comply with the presuit requirements prior to the expiration of the statute of limitations. Following a hearing, the trial court entered final summary judgment in favor of the defendants, finding that Gonzalez failed to comply with the presuit requirements because the "[a]ffidavits submitted by Dr. Lazzarin, even taken in total, fail to satisfy the ... requisite, statutory requirements of a `medical expert'"; the statute of limitations began to run "immediately following the surgery on November 22, 2004" and "expired no later than March 1, 2007"; and because Gonzalez did not cure the defect within the limitations period, the defendants are entitled to final summary judgment.[2] This appeal followed.

II. Standard of Review
Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Therefore, our review of the trial court's final summary judgment is de novo. Id.; Sheikh v. Coregis Ins. Co., 943 So.2d 242, 243 (Fla. 3d DCA 2006).

III. Issues
In this appeal, we must determine whether the trial court erred by concluding, as a matter of law, that the statute of limitations began to run on the date of Gonzalez's surgery, November 22, 2004, and whether the trial court erred by finding that, as a matter of law, the "[a]ffidavits submitted by Dr. Lazzarin, even taken in total, fail to satisfy the ... requisite, statutory requirements of a `medical expert.'" For the reasons that follow, we hold that: (1) based on the facts of this case, the determination of when the statute of limitations began to run is a question that must be determined by the jury as the finder of the facts; and (2) the four affidavits, which were accompanied by Dr. Lazzarin's curriculum vitae, satisfy the medical malpractice presuit requirements.

IV. Analysis

A. Statute of Limitations
In Tanner v. Hartog, 618 So.2d 177 (Fla. 1993), the Florida Supreme Court addressed the issue of when the statute of limitations begins to run in a medical malpractice action:
[W]e have determined to place an interpretation on the Nardone rule designed to ameliorate the harsh results which can sometimes occur by its strict application. We hold that the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, *405 the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred.
We recognize that our holding will make it harder to decide as a matter of law when the statute begins to run and may often require a fact-finder to make that determination.
Id. at 181-82.[3]
In the instant case, we find that the trial court erred by concluding as a matter of law that the statute of limitations began to run immediately following the surgery. In essence, the trial court concluded that, as a matter of law, if a patient is in pain immediately following surgery, that factor, "standing alone," "communicates the possibility of medical negligence," and therefore, the statute of limitations starts to run at that point. This was error.
Under the facts of this case, the issue of when the statute of limitations began to run is an issue of fact that must be resolved by the jury. The jury could conclude that based upon the pain Gonzalez was experiencing, the statute of limitations began to run immediately or shortly after the surgery. However, because Gonzalez alleges that Dr. Tracy continually assured her for approximately one year that her pain would resolve by the end of 2005, the jury could conclude that the statute of limitations did not begin to run until the end of 2005 because, by that time, Gonzalez had "reason to believe that medical malpractice may possibly have occurred." Tanner, 618 So.2d at 181. Alternatively, the jury could conclude that the statute of limitations did not begin to run until March 2006 when the neurologist informed Gonzalez that the pain she was experiencing was due to a nerve that was severed during surgery, not plantar fasciitis, as maintained by Dr. Tracy. Thus, the issue of when Gonzalez knew or should have known that medical malpractice may have occurred is an issue of fact that must be resolved by the jury. See Overholt v. Neto, 822 So.2d 589 (Fla. 2d DCA 2002) (reversing the entry of final summary judgment in a medical malpractice action based on the expiration of the statute of limitations where there was a genuine issue of material fact as to when the patient had reasonable knowledge or should have had reasonable knowledge of unwarranted surgery where plaintiff physician advised that the ongoing medical problem was the result of an unrelated disease); Kahler v. Kent, 616 So.2d 601, 601 (Fla. 4th DCA 1993) (reversing the entry of final summary judgment, finding that issue of when statute of limitations began to run must be submitted to jury because, based on the medical doctor's staff's representations, plaintiff "believed her condition to be a normal and expected consequence of her treatment"); Swagel v. Goldman, 393 So.2d 65, 65 (Fla. 3d DCA 1981) (reversing summary judgment in a medical malpractice case and finding that there existed a genuine issue as to when the plaintiff should have discovered the injury where the defendant physician continued to treat the plaintiff for over a year and assured him that the condition was temporary and it was a normal consequence of the operation); Almengor v. Dade County, 359 So.2d 892, 895 (Fla. 3d DCA 1978) (finding that summary judgment was precluded by the existence of genuine issues of material *406 fact as to whether plaintiff had been placed on notice more than four years prior to the filing of the action that her baby had been injured during birth, and whether hospital employees and doctors who delivered the baby, actually knew or should have known of the birth injury but failed to inform the plaintiff, thereby keeping the plaintiff in ignorance thereof). Thus, we conclude that the trial court should not have disposed of the statute of limitations issue by summary judgment, and on remand the jury must make this determination. See Leyte-Vidal v. Murray, 523 So.2d 1266, 1267 (Fla. 5th DCA 1988) ("Where there is a factual question as to notice or discovery in a medical malpractice action, it is for the jury to decide when the statute of limitation commences.").

B. Medical Expert Affidavits by Dr. Lazzarin
The trial court concluded that the four "[a]ffidavits submitted by Dr. Lazzarin, even taken in total, fail to satisfy the... requisite, statutory requirements of a `medical expert.'"[4] The defendants argue that Dr. Lazzarin's affidavits do not satisfy section 766.102(5)(a)2 because his affidavit dated July 11, 2007, avers that he has devoted professional time to an active clinical practice "[i]n the last three years," rather than "during the 3 years preceding the date of the occurrence." We find, however, that this minor deficiency in the corroborating affidavit does not warrant the dismissal of a medical malpractice action. See Michael v. Med. Staffing Network, Inc., 947 So.2d 614, 620 (Fla. 3d DCA 2007) ("[A] strict specificity requirement would be inconsistent with the Florida Supreme Court's mandate that chapter 766 be interpreted liberally so as not to unduly restrict a Florida citizen's constitutionally guaranteed access to courts.") (quoting Kukral v. Mekras, 679 So.2d 278 (Fla.1996)) (internal quotation marks omitted). Moreover, Dr. Lazzarin's affidavit was accompanied by his curriculum vitae, and when it is considered along with his affidavits, there is no doubt that he had the required professional experience "during the 3 years preceding the date of the occurrence." As such, this minor deficiency *407 is insufficient to warrant the entry of final summary judgment in favor of Dr. Tracy and Westchester General because the purpose of the presuit requirements, which is to notify the prospective defendant of a possible claim and to allow him to determine whether settling the claim would be appropriate, was satisfied in this case.
Accordingly, we reverse and remand for further proceedings consistent with this opinion.
NOTES
[1] Plantar fasciitis is an "irritation and swelling of the thick tissue on the bottom of the foot." Available at Medline Plus, Medical Encyclopedia, http://www.nlm.nih.gov/medlineplus/ency/article/007021. htm#Definition (last visited Oct. 14, 2008).
[2] Pursuant to section 766.106(4), Florida Statutes (2006), the statute of limitations is tolled during the ninety-day presuit period, and the claimant has sixty days or the remainder of the statute of limitations period, whichever is greater, within which to file the medical malpractice lawsuit.
[3] In Nardone v. Reynolds, 333 So.2d 25, 32 (Fla. 1976), the Florida Supreme Court held that the statute of limitations begins to run in a medical malpractice action either when the "plaintiff has notice of the negligent act giving rise to the cause of action or when the plaintiff has notice of the physical injury which is the consequence of the negligent act."
[4] Section 766.202(6), Florida Statutes (2006), defines "medical expert" as "a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102."

Section 766.102(5), Florida Statutes (2006), provides in relevant part:
(5) A person may not give expert testimony concerning the prevailing professional standard of care unless that person is a licensed health care provider and meets the following criteria:
(a) If the health care provider against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
1. Specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered; or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients; and
2. Have devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action to:
a. The active clinical practice of, or consulting with respect to, the same or similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients;
b. Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same or similar specialty; or
c. A clinical research program that is affiliated with an accredited health professional school or accredited residency or clinical research program in the same or similar specialty.