767 So.2d 510 (2000)
Wade Scott KING, a minor by his parents, Sandra MURRAY and John King, and court appointed guardian, Charles Ray; Sandra Murray; and John King, Appellants,
v.
Trinidad ROJAS, M.D.; Trinidad Rojas, M.D., P.A., and Martin Memorial Medical Center, Inc., Appellees.
No. 99-1238.
District Court of Appeal of Florida, Fourth District.
June 28, 2000.
Rehearing Denied August 28, 2000.
*511 Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, West Palm Beach, for appellants.
Gary Bruce Hill, Larry D. Hall and William W. Large of Hill, Reis, Adams, Hall & Schieffelin, P.A., Orlando, for appellee Martin Memorial Medical Center, Inc.
William T. Viergever, Michael S. Smith, and Barbara W. Sonneborn of Sonneborn Rutter Cooney Klingensmith & Eyler, P.A., West Palm Beach, for appellee Trinidad Rojas, M.D. and Trinidad Rojas, M.D., P.A.
FARMER, J.
In this medical malpractice action arising from the birth of a child who is now permanently injured, at first plaintiffs sued only the mother's obstetrician. Plaintiffs later added a pediatrician as well as the hospital as additional defendants. On motion for summary judgment, the trial judge found the claims against the pediatrician and hospital barred by the statute of limitations and repose. We reverse.
When Sandra Murray was admitted to Martin Memorial Hospital for the birth of Wade, she complained that she was then suffering from a vaginal infection. Despite this complaint, she alleged, she was never given any antibiotics or other appropriate treatment before or during the delivery. Shortly after his birth, Wade developed respiratory distress. A urine culture revealed that he had a streptococcus B infection. Later a genital culture from his mother revealed that she had the same infection as well. When Wade's conditioned worsened, he was later transferred to St. Mary's Hospital, and then to Miami Children's Hospital. As a result of the infection, Wade is profoundly brain damaged and severely handicapped.
Plaintiffs commenced this action against the obstetrician nearly two years after the birth. He answered with an affirmative defense that the injuries were caused by the negligence of another unidentified person.[1] Two years into the suit, plaintiffs served him with Fabre[2] interrogatories *512 asking the identity of this unknown actor, and the obstetrician thereupon identified the attending pediatrician as the real person responsible for the outcome. At that point, nearly four years after the birth, plaintiffs initiated their claim against that attending pediatrician as well as the hospital for negligence by its nursing staff, adding them as parties to the action. In their motion for summary judgment on the statute of limitation, these newly added defendants argued that the injuries to the child were obvious from nearly the very moment of birth, thereby charging plaintiffs with knowledge of their claim against the pediatrician and the hospital. The trial judge agreed with them; hence this appeal.
We start of course with the text of the statute of limitations. Section 95.11(4)(b) provides:
"An action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is discovered, or should have been discovered with the exercise of due diligence; however in no event shall the action be commenced later than 4 years from the incident or occurrence out of which the cause of action accrued, except that this 4-year period shall not bar an action brought on behalf of a minor on or before the child's eighth birthday." [e.s.]
In Tanner v. Hartog, 618 So.2d 177 (Fla. 1993), the court construed this statute as follows:
"the knowledge of the injury as referred to in the rule as triggering the statute of limitations means not only knowledge of the injury but also knowledge that there is a reasonable possibility that the injury was caused by medical malpractice. The nature of the injury, standing alone, may be such that it communicates the possibility of medical negligence, in which event the statute of limitations will immediately begin to run upon discovery of the injury itself. On the other hand, if the injury is such that it is likely to have occurred from natural causes, the statute will not begin to run until such time as there is reason to believe that medical malpractice may possibly have occurred." [e.s.]
618 So.2d at 181-182.[3]
The facts in this case involve medical practitioners acting not in concertas for example when multiple doctors and nurses attend a surgical procedurebut with different actors performing at different times. In asserting that the statute barred the newly filed claims against them, the pediatrician and the hospital argued that when the parents had notice of the injury to their child from the failure to diagnose and treat the streptococcus B infection, they necessarily had notice of malpractice by the pediatrician and hospital nursing staff, as well as the obstetrician.
We do not agree that the record is anywhere near so crystallized as to demonstrate beyond dispute a reasonable possibility that the condition of the child was attributable to the pediatrician and hospital nursing staff rather than the obstetrician. The origin of the condition leading to the injuries was a vaginal streptococcus B infection of the mother during labor, a condition classically within the expertise of her obstetrician. Defendants argue from the fact of mere knowledge that the child was found, post partum, suffering from the same infection as the mother that the parents were equally charged with knowing that the child's ultimate injury was due *513 instead to a departure from the standard of care by the pediatrician and nursing staff, as opposed to the obstetrician. We do not agree that the nature of the child's injury, standing alone, is of such a nature that as a matter of law it communicates the possibility of negligence by the pediatrician and the hospital medical staff. In short the issue was not amenable to the summary disposition given it by the trial court.
REVERSED.
STONE and SHAHOOD, JJ. concur.
NOTES
[1] Actually, this defense was incorrectly labeled as an affirmative defense. When a defendant in a negligence action alleges that a plaintiff's injury resulted from someone else's negligence rather than his own, the defendant is simply elaborating on the simplest defense of them all, namely that plaintiff has sued the wrong person. Saying that someone else is really the negligent actor is obviously not a confession and avoidance, the essence of a true affirmative defense.
[2] See Fabre v. Marin, 623 So.2d 1182 (Fla. 1993) (holding that statute governing apportionment of damages among tortfeasors required that any defendant's percentage of fault be determined against all actors involved whether named and joined as parties to action or not).
[3] In a footnote, the court added:

"We decline the suggestion that the statute should not begin to run until there is notice of a `probability' of medical malpractice. To do so would make the reference to `knowledge of the negligent act' in the Nardone rule redundant and would result in an inordinate extension of the statute."
618 So.2d at 181; see also Nardone v. Reynolds, 333 So.2d 25 (Fla.1976).