# Third District Court of Appeal

## State of Florida

Opinion filed October 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1853
Lower Tribunal No. 13-12833
_____

**Jose Vila,**

Appellant/Cross-Appellee,

vs.

**Philip Morris USA Inc.,**

Appellee/Cross-Appellant.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

The Ferraro Law Firm, P.A., and Paulo R. Lima, Allan B. Kaiser, Eric M. Tinstman, and Juan P. Bauta, II, for appellant/cross-appellee.

Shook, Hardy & Bacon L.L.P., and J. Daniel Gardner; Arnold & Porter LLP, and Geoffrey J. Michael (Washington, DC), for appellee/cross-appellant.

Before SUAREZ, C.J., and ROTHENBERG and FERNANDEZ, JJ.

ROTHENBERG, J.

In this Engle-progeny[1] case, the jury returned a verdict in favor of the defendant, Philip Morris USA Inc. ("Philip Morris"), finding that smoking cigarettes manufactured by Philip Morris was not a legal cause of the plaintiff's, Jose Vila ("Vila"), laryngeal cancer. Thereafter, the trial court entered a final judgment in favor of Philip Morris and denied Vila's motion for a new trial. Vila has appealed the final judgment and the denial of his motion for a new trial.[2]

## I. FACTS AND PROCEDURAL HISTORY

Vila testified that he started smoking cigarettes in 1969, when he was approximately fifteen years old and living in Spain, and he continued to smoke cigarettes after he moved to the Dominican Republic in 1974,[3] and to the United States in 1989. Vila also claimed that he smoked only Marlboro cigarettes during his entire smoking history.

---

[1] Engle v. Liggett Grp. Inc., 945 So. 2d 1246 (Fla. 2006).
[2] Philip Morris moved for a directed verdict arguing that Vila should not be permitted to rely on the Engle Phase I findings because doing so would violate Philip Morris's federal due process rights. The trial court denied Philip Morris's motion. Philip Morris cross-appealed the denial of its motion for a directed verdict, but has acknowledged that this argument was rejected by the Florida Supreme Court in Philip Morris USA, Inc. v. Douglas, 110 So. 3d 419 (Fla. 2013), and the Supreme Court of the United States has denied review of Douglas. Philip Morris USA, Inc. v. Douglas, 134 S. Ct. 332 (2013) (denying certiorari). Accordingly, we affirm the cross-appeal without further discussion.
[3] Shortly after moving to the Dominican Republic, Vila and his family moved to Costa Rica for approximately a year, but returned to the Dominican Republic thereafter.

In July 1993, Vila first developed symptoms of laryngeal cancer. Following the diagnosis of Vila's laryngeal cancer in 1994, he underwent a series of radiation treatments. In 1996, after the recurrence of Vila's laryngeal cancer, he underwent a laryngectomy.

Vila filed suit against Philip Morris[4] to recover damages for his alleged smoking-related laryngeal cancer, asserting claims for strict liability, fraud, conspiracy to commit fraud, and negligence, and during the course of the litigation, the trial court permitted Vila to amend his complaint to add a claim for punitive damages. Philip Morris filed its answer to the amended complaint, and in its nineteenth affirmative defense, Philip Morris asserted, without faulting any third party, that Vila's injuries and damages were caused solely "by forces and/or things over which Philip Morris USA had no control and for which Philip Morris USA is not responsible and not liable."

Approximately one month prior to the scheduled trial date, Philip Morris elicited deposition testimony from Vila's historian expert, Dr. Robert Proctor, that Marlboro cigarettes sold in the Dominican Republic when Vila lived there were manufactured by E. Leon Jimenes Company ("E. Leon Jimenes"), not Philip Morris. Vila's counsel did not move for a continuance to address this newly-

---

[4] Vila also filed suit against other tobacco companies—R.J. Reynolds Tobacco Company, Lorillard Tobacco Company, and Liggett Group, LLC, however, Vila voluntarily dismissed the lawsuit as to these defendants prior to trial.

discovered information, and the case proceeded to trial as scheduled.

At trial, Philip Morris's position was that Vila's laryngeal cancer was caused by the human papillomavirus, not by smoking cigarettes, but if smoking cigarettes did cause Vila's cancer, then it was not caused by smoking cigarettes manufactured by Philip Morris. In support of the latter argument, Philip Morris presented evidence relating to the three time periods Vila allegedly smoked cigarettes—1969 to 1974 when Vila lived in Spain; 1974 to 1989 when Vila lived in the Dominican Republic; and December 1989, when Vila moved to the United States, to July 1993, when Vila began to have symptoms of laryngeal cancer.

As to the first time period, Philip Morris challenged Vila's claim that he smoked Marlboro cigarettes in Spain from 1969 to 1974. Philip Morris elicited testimony from Vila's expert, Dr. Proctor, that Marlboro cigarettes were not only the least popular brand of cigarettes in Spain during that time period, but they were also the most expensive, and therefore, it was unlikely that Vila, who was a teenager and unemployed, would have smoked Marlboro cigarettes in Spain. As to the second time period, Philip Morris elicited testimony from Dr. Proctor that from 1974 to 1989, when Vila was living in the Dominican Republic, Marlboro cigarettes sold in the Dominican Republic were manufactured by E. Leon Jimenes, not Philip Morris. Lastly, Vila's expert on medical causation, Dr. William Goodwin, testified that even if Vila smoked cigarettes manufactured by Philip

4

Morris from the time he entered the United States, in December 1989, until the time he developed symptoms of laryngeal cancer, in July 1993, he has never seen a person develop laryngeal cancer as a result of smoking cigarettes over a period of three-and-a-half years.

Prior to trial, the trial court granted Vila's motion in limine to exclude any reference to certain personal information. During the trial, the parties disputed when Vila had stopped smoking—in 1994 or 1996. Vila testified on direct examination that he quit smoking in 1996. However, during Vila's cross-examination, Philip Morris's counsel impeached Vila with portions of his medical records that reflect that Vila told his physicians that he had stopped smoking in 1994, not 1996. To impeach Vila, Philip Morris's counsel would first display to Vila and the jury the page of the medical record containing the physician's signature, which counsel had highlighted, to ascertain whether Vila recognized the physician's name. Next, counsel would display the page of the medical record reflecting that Vila had told that physician that he had stopped smoking in 1994. For the particular medical record at issue, the page containing the highlighted physician's signature also contained a reference to the personal information that was excluded by the motion in limine. After Philip Morris's counsel confirmed that Vila recognized the physician's name, counsel displayed a different page of the medical record. At that point, Vila's counsel requested a sidebar.

5

At the sidebar, Vila's counsel objected to the unredacted signature page displayed to the jury and requested a mistrial. Philip Morris's counsel responded that he had not realized that the signature page contained the excluded personal information and that the violation of the motion in limine was inadvertent. In order to assess Vila's motion for a mistrial, the trial court asked Vila to step down from the witness stand and sent the jurors into the jury room. Thereafter, the trial court called each juror to the courtroom one by one and asked if he or she had read or looked at anything on the signature page other than the highlighted area containing the physician's signature. Each juror responded that he or she had not. Thereafter, the trial court asked Vila's counsel if there was anything else he wished to say. Vila's counsel responded that he did not, and the trial court denied Vila's motion for a mistrial.

When charging the jury and explaining the verdict form to the jury, the trial court instructed the jury to answer the following questions on the verdict form: (1) "Was Jose Vila addicted to cigarettes containing nicotine and, if so, was such addiction a legal cause of his laryngeal cancer?"; and (2) "Was smoking cigarettes manufactured by Philip Morris USA Inc. a legal cause of Jose Vila's laryngeal cancer?" The jury answered "yes" as to the first question and "no" as to the second question, and thereafter, the trial court entered a final judgment in favor of Philip Morris. The trial court denied Vila's motion for a new trial, and Vila's

appeal followed.

## II. ANALYSIS

A.  <u>Whether the trial court erred by including question number (2) on the verdict form over Vila's objection</u>

Vila contends that the trial court erred by including question number (2) on the jury verdict form where Philip Morris failed to plead as an affirmative defense the liability of E. Leon Jimenes as a <u>Fabre</u>[5] defendant.  We disagree because Philip Morris presented an "empty chair" defense, rather than seeking to include E. Leon Jimenes as a <u>Fabre</u> defendant on the verdict form and have the jury apportion any fault to E. Leon Jimenes.

There is a distinct legal difference between asserting an "empty chair" defense and seeking an apportionment of fault under <u>Fabre</u>.  To present an "empty chair" defense, a defendant may "point to an empty chair" by arguing that "a non-party is responsible for the plaintiff's injuries."  <u>Black v. Montgomery Elevator Co.</u>, 581 So. 2d 624, 625 (Fla. 5th DCA 1991).  To present an "empty chair" defense, the defendant need only answer the complaint with a general denial and argue to the jury that the injury was due to the negligence of a non-party to the suit.  <u>See</u> <u>Clement v. Rousselle Corp.</u>, 372 So. 2d 1156, 1158 (Fla. 1st DCA 1979) ("A defendant who has answered with a general denial, is entitled to prove, and to argue to the jury, that the accident was due solely to the negligence of a person not

_____

[5] <u>Fabre v. Marin</u>, 623 So. 2d 1182 (Fla. 1993).

7

party to the suit."); see also Pearson v. Royal Caribbean Cruises, Ltd., 751 So. 2d 125, 126 (Fla. 3d DCA 2000) (affirming the order under review by relying on the above quoted statement from Clements).  As an "empty chair" defense is not truly an affirmative defense, it does not have to be pled in the defendant's affirmative defenses.  See King ex rel. Murray v. Rojas, 767 So. 2d 510, 511 n.1 (Fla. 1st DCA 2000) ("When a defendant in a negligence action alleges that a plaintiff's injury resulted from someone else's negligence rather than his own, the defendant is simply elaborating on the simplest defense of them all, namely that [the] plaintiff has sued the wrong person.  Saying that someone else is really the negligent actor is obviously not a confession and avoidance, the essence of a true affirmative defense."); see also Dover v. R.J. Reynolds Tobacco Co., 2014 WL 4723116, at *3 n.25 (M.D. Fla. Sept. 22, 2014) (noting that "it is not an affirmative defense for a defendant in a negligence action to argue that [the] plaintiff's injury resulted from someone else's negligence").

Conversely, if the defendant wishes to seek an apportionment of fault against a nonparty, it must identify the nonparty and plead the negligence of that nonparty as an affirmative defense.  If these requirements are met, then the nonparty defendant may be placed on the verdict form and the jury may consider and allocate the percentage of fault attributable to the nonparty defendant.  "[I]n order to include a nonparty on the verdict form pursuant to Fabre, the defendant

8

must plead as an affirmative defense the negligence of the nonparty and specifically identify the nonparty." Nash v. Wells Fargo Guard Servs., Inc., 678 So. 2d 1262, 1264 (1996); see also Loureiro v. Pool by Greg, Inc., 698 So. 2d 1262, 1263 (Fla. 4th DCA 1997) (holding that the issue of a non-party's liability was not properly raised by the pleadings because the defendant's affirmative defense "did not specifically identify any non-party and [the defendant] did not move to amend the defense at any time," and therefore, the plaintiff's "objection to the injection of non-party liability into the case should have been sustained").

As explained in Vucinich v. Ross, 893 So. 2d. 690, 694 (Fla. 5th DCA 2005), there is a fundamental difference between a Fabre affirmative defense and an "empty chair" defense:

> "*Fabre* defendants are non-parties which are alleged by a party defendant to be wholly or partially negligent and should be placed on the verdict form so there can be an apportionment of fault against them for non-economic damages . . . ." [Phillips v. Guarneri, 785 So. 2d 705, 706 (Fla. 4th DCA 2001)]. On the other hand, the term "empty chair" refers to the argument that "some non-party is the sole legal cause of the harm alleged but, unlike a *Fabre* defendant, this non-party is not placed on the verdict form and there is no apportionment of fault." Id. at n.4.

In the instant case, in its affirmative defenses, Philip Morris did not specifically identify E. Leon Jimenes as a nonparty who was responsible for Vila's injuries, and Philip Morris did not ask the jury to apportion any fault to E. Leon Jimenes by seeking to include E. Leon Jimenes as a nonparty defendant.

Therefore, consistent with Philip Morris's pleadings, the verdict form did not include E. Leon Jimenes as a Fabre defendant, and contrary to Vila's assertion, question number (2) of the verdict form did not somehow effectively place E. Leon Jimenes on the verdict form as a Fabre defendant. Instead, the record reflects that, at most, Philip Morris merely presented an "empty chair" defense.

In fact, Philip Morris's main argument was that smoking cigarettes did not cause Vila's cancer. In the alternative, Philip Morris however argued that even if Vila's addiction to cigarettes was a legal cause of his laryngeal cancer, smoking cigarettes manufactured by Philip Morris was not a legal cause of his cancer. As explained earlier, Philip Morris broke down Vila's smoking history into three different timeframes based on where he lived. As to the timeframe when he lived in Spain (1969 to 1974), Philip Morris argued that it was unlikely that Vila, who was an unemployed teenager, smoked Marlboro cigarettes in Spain because they were not only the least popular cigarettes, but they were also the most expensive cigarettes. Second, as to the period when Vila lived in the Dominican Republic (1974 to 1989), Philip Morris elicited testimony that the Marlboro cigarettes sold in the Dominican Republic were manufactured by E. Leon Jimenes, not Philip Morris. Finally, as to the period from when Vila moved to the United States (December 1989) to his date of diagnosis (July 1993), Philip Morris elicited testimony from Vila's causation expert that he had never seen a person develop

laryngeal cancer by smoking cigarettes for three-and-a-half years. Accordingly, we conclude that question number (2) did not effectively place E. Leon Jimenes on the jury verdict form as a <u>Fabre</u> defendant. Rather, Philip Morris presented a successful "empty chair" defense.

B. <u>Whether the trial court abused its discretion by denying Vila's motion for a mistrial based on Philip Morris's violation of the motion in limine</u>

Vila contends that the trial court erred by denying his motion for a mistrial based on Philip Morris's violation of the motion in limine. A trial court's ruling on a motion for mistrial is reviewed for an abuse of discretion, <u>Salazar v. State</u>, 991 So. 2d 364, 772 (Fla. 2008), and a "motion for mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial." <u>Id.</u> (quoting <u>England v. State</u>, 940 So. 2d 389, 401-02 (Fla. 2006)).

In the instant case, following Vila's objection and request for a mistrial, the trial court voir dired each of the jurors individually after asking the jury to step into the jury room and instructing the jurors not to discuss the case or the questioning by the trial court with the rest of the jurors. Thereafter, the trial court voir dired each juror one by one, asking if he or she had read anything on the signature page other than the physician's signature, which was highlighted. Each juror responded that he or she had not. Based on the actions taken by the trial court and each juror's response, we find no abuse of discretion where each juror's response to the trial court's question indicates that he or she did not see the information prohibited

11

by the motion in limine.

## III. CONCLUSION

Based on the reasons set forth in this opinion, we affirm the final judgment entered in favor of Philip Morris and the order denying Vila's motion for a new trial.

Affirmed.